UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| HEALTHSMART BENEFIT SOLUTIONS, INC.<br><br>versus<br><br>PRINCIPIA UNDERWRITING, AND HUDSON SPECIALTY INSURANCE COMPANY. | CIVIL ACTION NO.<br><br>JUDGE<br><br>MAGISTRATE |

## COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff HealthSmart Benefit Solutions, Inc. ("HealthSmart"), by its attorneys Jones Walker, LLP and Manatt, Phelps & Phillips, LLP, for its complaint against Defendants Principia Underwriting ("Principia") and Hudson Specialty Insurance Company ("Hudson") (collectively "Principia" and "Hudson" will be referred to as the "Insurers") states as follows:

### NATURE OF ACTION

1. This is a civil action for breach of insurance contracts and declaratory relief. HealthSmart, a third party administrator, is the Named Insured under both the Third Party Administrator and Technology Professional Liability, Network Security Liability and Business Interruption Insurance Policy no. 1051/ND011670Z, in effect from at least December 31, 2012 to December 31, 2013 issued by defendant Principia (the "Principia Policy"), and the Insurance Services Professional Liability Insurance Policy no. FC15100135, in effect from at least December 31, 2013 to December 31, 2014 issued by defendant Hudson (the "Hudson Policy") (collectively, and as defined more fully below, the "Principia Policy" and the "Hudson Policy" will be referred to as the "Policies"). The coverage afforded by both of these Policies was understood and intended, among other benefits, to protect HealthSmart against claims for wrongful acts.

2. The eventuality that the Policies were sold to cover occurred. HealthSmart was

{N2798555.5}     1

named as a defendant in a putative class action entitled *Opelousas General Hospital Authority v. PPO Plus, LLC, et al.*, originally filed in the 27th Judicial District Court for the Parish of St. Landry, State of Louisiana, Case No. 13-5380-D, and which was subsequently removed to the United States District Court, Western District of Louisiana, Lafayette Division, Civil Action No. 6:14-CV-00395-RTH-CMH (the "*Opelousas General* lawsuit"). In the *Opelousas General* lawsuit, plaintiff alleges that HealthSmart committed certain acts, errors and omissions that allegedly violate La. R.S. 40:2201, *et seq*. (the "PPO Act"), including failing to provide the notice required under the PPO Act.

3. Because the *Opelousas General* lawsuit is the precise type of claim expressly covered by the both of the Policies sold to HealthSmart, it timely notified Principia and Hudson of the lawsuit, asking them to assume all of their duties under the Policies.

4. Instead of honoring their duties, however, the Insurers have sought to deprive HealthSmart of the financial security and protection that was the primary reason for HealthSmart's purchase of the Policies. The Insurers denied coverage for the *Opelousas General* lawsuit. The Insurers' total abandonment of HealthSmart constitutes the most fundamental breach of each of the Policy's terms and the Insurers' good faith obligations under their respective Policies.

5. The Insurers' conduct is contrary to the duty of good faith and fair dealing that they owe to HealthSmart and constitutes bad faith. HealthSmart seeks compensatory, punitive and exemplary damages, statutory penalties, declaratory judgment, attorneys fees' and other relief against the Insurers.

## THE PARTIES

6. HealthSmart is an Illinois corporation with its principal place of business in Irving, Texas. At all relevant times, HealthSmart has been authorized to transact, and is transacting, business in the State of Louisiana.

7. HealthSmart is informed and believes, and on that basis alleges, that Principia is an underwriting agency owned by its principals whom are residents and citizens of the United

Kingdom of Great Britain. The Principia Policy identifies the syndicates on whose behalf Principia has underwritten the Principia Policy. At all relevant times, these syndicates were transacting and are transacting business in the State of Louisiana. Each syndicate is sued in his/her/its individual capacity. Principia sold the policy to HealthSmart in the United States, in which Principia agreed to submit any disputes arising thereunder to, among other United States courts, the courts of the State of Louisiana and to have such disputes determined in accordance with the law and practice of those courts.

8. HealthSmart is informed and believes, and on that basis alleges, that Hudson is a New York corporation, with its principal place of business in New York, New York. At all relevant times, Hudson was authorized to transact, and was transacting business, in the State of Louisiana.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. HealthSmart is a citizen of the State of Illinois, on the one hand, and Principia is a citizen of the United Kingdom, and Hudson is a citizen of New York, on the other hand. And, the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over Principia and Hudson because they (a) are licensed and/or authorized to do business in Louisiana, (b) have, within the relevant time period, engaged in or transacted the business of selling insurance and investigating claims in Louisiana, and (c) have issued policies that cover insureds doing business in Louisiana.

11. Venue in this District is proper pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events and/or omissions giving rise to the claim occurred within the Western District of Louisiana.

## THE PRINCIPIA POLICY

12. Principia sold to HealthSmart Third Party Administrator and Technology Professional Liability, Network Security Liability and Business Interruption Insurance Policy no. 1051/ND011670Z, in effect from at least December 31, 2012 to December 31, 2013 (the

"Principia Policy"). The Principia Policy provides HealthSmart with $5,000,000 in coverage. A true and correct copy of at least the relevant portions of the Principia Policy is attached hereto as Exhibit "A" and is incorporated herein by reference.

13. Pursuant to the Coverage Agreements in the Principia Policy, Principia is obligated to:

> pay on [HealthSmart's] behalf **Loss** and **Claim Expenses** resulting from any **Claim** by one or more **Third Parties** first made against [HealthSmart] and notified by [HealthSmart] to [Principia] during the **Policy Period** arising from any act, error or omission in the course of [HealthSmart's] **Technology Activities** and **Managed Care Activities** giving rise to Claims alleging:
>
> Negligence – negligent act, error, omission, misstatement, misrepresentation, breach of an express or implied contractual duty to use reasonable care and skill including negligent supervision of an employee or sub-contractor or any other negligent conduct of the **Insured** or any sub-contractor or consultant supplied to the client for whom the **Insured** is legally liable;
>
> * * *
>
> Breach of contract – unintentional breach of a written contract to provide services or **Deliverables** in the course of Your **Technology Activities** and **Managed Care Activities** by reason of those services or **Deliverables** failing materially to conform with any agreed written specification or delivery timescale that forms part of the relevant contract, or failing to meet any agreed upon or implied industry or statutory term concerning quality or fitness for purpose. . . .

Principia Policy, Coverage Agreements, § A, Claims Against You.

14. "Loss" is defined in the Principia Policy to include:

> [HealthSmart's] legal liability to pay monetary awards, judgements, or settlements, including those that are statutory, punitive or exemplary where insurable in the jurisdiction of the order, including claimant's costs.

*Id.*, § D, Definitions, Loss.

15. "Claim Expenses" are defined in the Principia Policy to include: "necessary and reasonable legal costs and other reasonable fees or expenses in the defense, negotiation, mediation, arbitration or settlement of any **Claim** or appeal covered under this Policy, including the investigation, handling or responding to a demand for a clarification or correction or retraction." *Id.*, § D, Definitions, Claim Expenses.

16. "Claim" is defined in the Principia Policy as a "written demand or service of civil proceedings by one or more claimants seeking any of the following: monetary damages, injunctive relief, retraction or correction, arbitration or mediation." *Id.*, § D, Definitions, Claim.

17. "Third Party" is defined in the Principia Policy as "one or more independent third parties. . . ." *Id.*, § D, Definitions, Third Party. Opelousas General qualifies as a Third Party under the Principia Policy.

18. "Managed Care Activities" are defined in the Principia Policy to include the following services or activities:

> advertising, marketing, selling, or enrolment for health care or workers' compensation plans; **Claim Services**; establishing health care provider networks; . . . and services or activities performed in the administration or management of healthcare or workers' compensation plans.

*Id.*, § D, Definitions, Managed Care Activities.

19. The costs of the investigation and defense of HealthSmart for the *Opelousas General* lawsuit are covered by the Principia Policy, and do not come within any exception to, exclusion from, or endorsement limiting, coverage under it. Accordingly, in connection with the *Opelousas General* lawsuit, Principia was obligated to investigate the lawsuit fully and to pay the Claim Expenses incurred by HealthSmart in connection with this lawsuit. Principia has

refused to honor its obligations under the Principia Policy in all respects.

20. HealthSmart has complied with all terms and conditions precedent, to the extent not waived or otherwise excused, including payment of all premiums and providing timely notice of the *Opelousas General* lawsuit. HealthSmart is entitled to the full benefits and protections provided by the Principia Policy. HealthSmart reasonably expected the Principia Policy to protect it in connection with the *Opelousas General* lawsuit and reasonably relied upon the Principia Policy for such protection.

## THE HUDSON POLICY

21. Hudson sold to HealthSmart Insurance Services Professional Liability Insurance Policy no. FC15100135, in effect from at least December 31, 2013 to December 31, 2014 (the "Hudson Policy"). The Hudson Policy provides HealthSmart with $5,000,000 in coverage. A true and correct copy of at least the relevant portions of the Hudson Policy is attached hereto as Exhibit "B" and is incorporated herein by reference.

22. Pursuant to the Insuring Agreement of the Hudson Policy, Hudson agreed to:

>  pay on behalf of the "Insured" all "Claim Expenses" and "Damages", in excess of the Retention, that the "Insured" becomes legally obligated to pay as a result of a "Claim" for a "Wrongful Act"; provided that the:
> 
>  1. "Claim" is first made against the "Insured" during the "Policy Period" or any applicable "Extended Reporting Period";
> 
>  2. "Claim" is reported to the "Company" pursuant to Section VIII of this "Policy"; and
> 
>  3. "Wrongful Act" is committed on or after the Retroactive Date" and before the end of the "Policy Period".

Hudson Policy, § I.A, Insuring Agreement.

23. "Claim Expenses" are defined in the Hudson Policy to include:

>  1. fees charged by defense counsel in the investigation and defense of a covered "Claim". . . .

      2.      all other reasonable fees, costs and expenses (except loss of earnings) incurred by the "Company", or incurred by the "Insured" with the prior written consent of the "Company", in the investigation, defense or appeal of a covered "Claim". . . .

*Id.*, § II.G, Definitions, Claim Expenses.

      24.      "Damages" are defined in the Hudson Policy to mean any compensatory sum, including any:

      1.      monetary judgment, award (including any award of attorney's fees) or settlement;

      2.      pre-judgment and post-judgment interest awarded by the court;

      3.      court costs taxed against the "Insured" in the suit; or

      4.      multiplied portion of any multiplied damage award and punitive or exemplary damages where insurable by law; provided that the enforceability of such coverage shall be governed by the applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award

*Id.*, § II.K, Definitions, Damages.

      25.      The Hudson Policy defines "Claim" as:

      1.      a demand or written request for monetary or non-monetary relief;

      2.      a demand for arbitration, mediation or other formal alternative dispute resolution;

      3.      a civil proceeding commenced by service of a complaint or similar pleading.

made against an "Insured" for a "Wrongful Act", including any appeal therefrom.

*Id.*, § II.F, Definitions, Claim.

      26.      "Wrongful Act" is defined in the Hudson Policy as:

any actual or alleged act, error or omission committed or attempted by an "Insured", or by any other person for whom the "Named Insured" is legally liable, solely in the performance of or failure to perform "Professional Services", including but not limited to "Breach of Privacy", "Breach of Security", "Intellectual Property Rights Infringement" and/or "Personal and Advertising Injury".

*Id.*, § II.II, Definitions, Wrongful Act.

27. "Professional Services" are defined in the Hudson Policy to include the following services performed by HealthSmart:

1. Services as an insurance general agent, insurance agent, insurance broker, insurance surplus lines broker, wholesale insurance broker, managing general agent, managing general underwriter, insurance underwriting manager, insurance program administrator, insurance appraiser, insurance claims administrator, expert witness concerning any insurance related subject or matter, formal insurance instructor, lecturer, speaker or teacher, and notary public;

2. Services as an insurance consultant including risk management, loss control and anti-fraud consulting;

3. Services as a licensed registered representative rendered in connection with the sale and servicing of variable life and variable annuity products;

4. Insurance premium financing;

5. any other services stated in Item 9 of the Declarations.

*Id.*, § II.BB, Definitions, Professional Services.

28. The costs of the investigation and defense of HealthSmart for the *Opelousas General* lawsuit are covered by the Hudson Policy, and do not come within any exception to, exclusion from, or endorsement limiting, coverage under it. Accordingly, in connection with the

*Opelousas General* lawsuit, Hudson was obligated to investigate the lawsuit fully and to pay the Claim Expenses incurred by HealthSmart in connection with this lawsuit. Hudson has refused to honor its obligations under the Hudson Policy in all respects.

29. HealthSmart has complied with all terms and conditions precedent, to the extent not waived or otherwise excused, including payment of all premiums and providing timely notice of the *Opelousas General* lawsuit. HealthSmart is entitled to the full benefits and protections provided by the Hudson Policy. HealthSmart reasonably expected the Hudson Policy to protect it in connection with the *Opelousas General* lawsuit and reasonably relied upon the Hudson Policy for such protection.

### THE *OPELOUSAS GENERAL* LAWSUIT AND THE INSURERS' BREACHES

30. On or about December 18, 2013, Opelousas General filed a First Amended and Restated Class Action Petition for Damages and for Injunctive Relief naming HealthSmart for the first time as a defendant in the *Opelousas General* lawsuit (the "First Amended Petition"). On January 15, 2014, Opelousas General served HealthSmart with a copy of the First Amended Petition. A true and correct copy of the First Amended Petition for Damages in the *Opelousas General* lawsuit is attached hereto as Exhibit "C" and is incorporated herein by reference.

31. Pursuant to the First Amended Petition, Opelousas General seeks, among other things, damages, attorneys' fees and costs, as well as injunctive relief against HealthSmart for alleged acts, errors or omissions in connection with HealthSmart's operation of a Preferred Provider Organization ("PPO") network, which Opelousas General alleges violated the PPO Act. Therefore, the *Opelousas General* lawsuit contains allegations against HealthSmart that constitute activities or services in the performance of Managed Care Activities under the Principia Policy, and wrongful acts under the Hudson Policy.

32. On or about January 22 and 23, 2014, HealthSmart notified Hudson and Principia, respectively, of the *Opelousas General* lawsuit and requested that the Insurers provide coverage to HealthSmart in connection with such suit under their Policies.

33. On or about January 24, 2014, and again on March 24, 2014, Principia denied

coverage to HealtSmart. In emails dated January 24, 2014 and March 24, 2014, Principia stated that the *Opelousas General* lawsuit was reported outside of Principia's policy period and thus, denied coverage for the *Opelousas General* lawsuit. This basis for denial is contrary to the facts, the terms of the Principia Policy and applicable law. Among other reasons, even if the "Claim" was not reported to Principia during its policy period, it was reported to Principia as soon as HealthSmart was served with the First Amended Petition, and HealthSmart is equitably excused from any requirement to report the "Claim" within the policy period.

34. On January 24, 2014, Hudson initially advised HealthSmart that it was continuing its investigation and would accept a defense under a reservation of rights. However, in a March 13, 2014 letter, Hudson denied coverage to HealthSmart for the *Opelousas General* lawsuit. Hudson raised several erroneous grounds for denial, including an exclusion that purports to preclude coverage for any Claim based upon any prior and/or pending civil proceeding involving HealthSmart as of December 31, 2013. However, this exclusion does not provide Hudson with a proper basis to deny coverage because, among other reasons, HealthSmart was not served with the First Amended Petition in the *Opelousas General* lawsuit until January 15, 2014, during Hudson's policy period.

35. HealthSmart has provided timely notice to the Insurers under the terms of their Policies and the law of the *Opelousas General* lawsuit. In the alternative, if notice is found to have been delayed, such delay is excused, and, further, the Insurers have waived any late notice defense; are estopped from asserting a late notice defense; and have suffered no prejudice from the timing of notice of the *Opelousas General* lawsuit.

36. The Insurers have unreasonably and arbitrarily failed to honor their duties to pay Claims Expenses to HealthSmart and have continued to ignore the duties imposed by contract, by law, and by insurance industry custom and practice. Instead, the Insurers are allowing HealthSmart to suffer the brunt of the defense fees and costs for the *Opelousas General* lawsuit, which has resulted in substantial prejudice to HealthSmart.

### FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT
### RE DUTY TO PAY DEFENSE COSTS AGAINST PRINCIPIA

37. HealthSmart realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 37 above.

38. Principia owes, and continues to owe, HealthSmart a duty to pay the Claim Expenses incurred in connection with the defense of the *Opelousas General* lawsuit if any part of that lawsuit is potentially covered. Principia's defense duty to HealthSmart was owed immediately for the *Opelousas General* lawsuit. Principia's commitment to pay these Claim Expenses for HealthSmart was a significant right afforded to it under the Principia Policy. This is a commitment that Principia wrongfully breached when it denied coverage, forcing HealthSmart to incur substantial attorneys' fees and costs to fund its own defense, which fees and costs continue to accrue.

39. Principia has a duty under the Principia Policy, the law, and insurance industry custom and practice to conduct a full and thorough investigation, including of all bases that might support HealthSmart' claims for coverage, before denying coverage as to the *Opelousas General* lawsuit. HealthSmart is informed and believes, and based thereon alleges, that instead of performing this duty, Principia denied coverage based on, at most, a review of the date the notice letter was sent and the Policy, and that Principia conducted no independent investigation and did not seek, or properly consider, any material extrinsic evidence.

40. Principia breached its duties under the Principia Policy by, among other things, (a) failing and refusing to pay defense costs incurred by HealthSmart in connection with the *Opelousas General* lawsuit; (b) refusing and failing to conduct a full and thorough investigation of the *Opelousas General* lawsuit, and asserting grounds for denying coverage based on its inadequate and improper investigation; (c) wrongfully and unreasonably denying coverage to HealthSmart in connection with the *Opelousas General* lawsuit; (d) asserting grounds for denying coverage that it knows are not supported by, and in fact are contrary to, the terms of the Principia Policy, the law, insurance industry custom and practice, and the facts; (e) failing to

fully inquire into possible bases that might support coverage for the *Opelousas General* lawsuit; (f) wrongfully asserting "late notice" as a ground for denying coverage, even though notice was not untimely, and even if it was delayed, Principia cannot establish any prejudice from the alleged delay in notice, and it was not actually or substantially prejudiced by any delay in notice; and (g) by giving greater consideration to its own interests than it gave to the interests of HealthSmart.

41. As a direct and proximate result of Principia's acts, HealthSmart has been damaged in an amount in excess of jurisdictional limits, plus interest thereon.

## SECOND CLAIM FOR RELIEF – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING AGAINST PRINCIPIA

42. HealthSmart realleges and incorporate by reference herein each allegation contained in paragraphs 1 through 41 above.

43. Implied in the Principia Policy were covenants that Principia would act in good faith and deal fairly with its insured, that Principia would do nothing to interfere with HealthSmart's rights to receive the benefits of the Principia Policy, and that Principia would give at least the same level of consideration to its insured's interests as it gives to its own interests.

44. Instead of complying with these duties, Principia acted in bad faith by:

(a) Wrongfully and unreasonably denying coverage to HealthSmart;

(b) Wrongfully and unreasonably refusing to reimburse HealthSmart for the attorneys' fees and costs that it has incurred, and continues to incur, in the defense of the *Opelousas General* lawsuit, without any basis in fact or law to do so, thereby forcing HealthSmart to incur substantial financial loss without any assistance from Principia;

(c) Failing to conduct a full and thorough investigation of the *Opelousas General* lawsuit and facts surrounding the dispute, and asserting grounds for denying coverage based on its inadequate and improper investigation;

(d) Wrongfully and unreasonably asserting grounds for denying coverage that Principia knows are not supported by, and in fact are contrary to, the terms of the Principia Policy, the law, insurance industry custom and practice, and the facts;

(e) Wrongfully asserting "late notice" as a ground for denying coverage, even though notice was not untimely, and even if it was delayed, Principia cannot establish any prejudice from the alleged delay in notice, and it was not actually or substantially prejudiced by any delay in notice;

(f) Failing to fully inquire into possible bases that might support coverage for the *Opelousas General* lawsuit;

(g) Giving greater consideration to its own interests than it gave to HealthSmart's interests; and

(h) Otherwise acting as alleged above.

45. In breach of the implied covenant of good faith and fair dealing, Principia did the things and committed the acts alleged above for the purpose of consciously withholding from HealthSmart the rights and benefits to which it is entitled under the Principia Policy. Principia's acts are inconsistent with HealthSmart's reasonable expectations, are contrary to established claims practices and legal requirements, are contrary to the express terms of the Principia Policy, and constitute bad faith.

46. Principia's conduct has been done with a conscious disregard of HealthSmart's rights, constituting oppression, fraud, and/or malice, in that Principia has engaged in a series of acts designed to deny HealthSmart the benefits due under its Policy. Specifically, Principia, by acting as alleged above, in light of information, facts, and relevant law to the contrary, consciously disregarded HealthSmart's rights and forced them to incur substantial and oppressive financial losses, which continue to accrue, without any assistance from Principia, thereby inflicting substantial financial damage on HealthSmart. Therefore, HealthSmart is entitled to recover punitive damages and applicable statutory penalties from Principia in an amount that is sufficient to punish and make an example of Principia and in order to deter similar

conduct in the future.

47. HealthSmart is entitled to recover all of its attorneys' fees and costs that it reasonably incurred, and continues to incur, in its efforts to obtain the benefits of insurance that have been, and continue to be, wrongfully and in bad faith withheld by Principia. When the precise amount of these fees and costs is known, HealthSmart will seek leave of court to amend this petition.

48. As a direct and proximate result of Principia's acts, HealthSmart has been damaged in an amount in excess of the Court's jurisdictional limits. The actual amount of damages has not been precisely ascertained yet, but includes the fees and expenses that HealthSmart incurred, continues to incur, and may incur, in its defense of the *Opelousas General* lawsuit and any settlement of, or judgment in, the *Opelousas General* lawsuit, and other damages not yet known or determined.

## THIRD CLAIM FOR RELIEF – DECLARATORY RELIEF AGAINST PRINCIPIA

49. HealthSmart realleges and incorporates by reference the allegations contained in paragraphs 1 through 48 above.

50. Principia is obligated under its Policy to investigate fully, to defend HealthSmart fully or to pay in full all sums HealthSmart has incurred or will incur in the defense or settlement of the *Opelousas General* lawsuit.

51. Principia has failed and continues to refuse to accept its obligations to investigate fully, or to pay in full all sums HealthSmart has expended or will expend in the defense or indemnity of the *Opelousas General* lawsuit.

52. The facts alleged in this action show that an actual and justiciable controversy exists between HealthSmart and Principia concerning Principia's obligations to investigate fully, and to pay in full all sums HealthSmart has incurred or will incur in the defense or for indemnity of the *Opelousas General* lawsuit. This controversy has adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Thus, HealthSmart

seeks a declaration of its rights to defense costs and indemnification by Principia regarding the *Opelousas General* lawsuit.

### FOURTH CLAIM FOR RELIEF – BREACH OF CONTRACT RE DUTY TO PAY DEFENSE COSTS AGAINST HUDSON

53. HealthSmart realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 52 above.

54. Hudson owes, and continues to owe, HealthSmart a duty to pay the Claim Expenses incurred in connection with the defense of the *Opelousas General* lawsuit if any part of that lawsuit is potentially covered. Hudson's defense duty to HealthSmart was owed immediately for the *Opelousas General* lawsuit. Hudson's commitment to pay these Claim Expenses incurred by HealthSmart was a significant right afforded to it under the Hudson Policy. This is a commitment that Hudson wrongfully breached when it denied coverage, forcing HealthSmart to incur substantial attorneys' fees and costs to fund its own defense, which fees and costs continue to accrue.

55. Hudson has a duty under the Hudson Policy, the law, and insurance industry custom and practice to conduct a full and thorough investigation, including of all bases that might support HealthSmart's claims for coverage, before denying coverage as to the *Opelousas General* lawsuit. HealthSmart is informed and believes, and based thereon alleges, that instead of performing this duty, Hudson denied coverage based on, at most, a review of its Policy and the *Opelousas* lawsuit, and that Hudson conducted no independent investigation and did not seek, or properly consider, any material extrinsic evidence.

56. Hudson breached its duties under the Hudson Policy by, among other things, (a) failing and refusing to pay defense costs incurred by HealthSmart in connection with the *Opelousas General* lawsuit; (b) refusing and failing to conduct a full and thorough investigation of the *Opelousas General* lawsuit, and asserting grounds for denying coverage based on its inadequate and improper investigation; (c) wrongfully and unreasonably denying coverage to HealthSmart in connection with the *Opelousas General* lawsuit; (d) asserting grounds for

denying coverage that it knows are not supported by, and in fact are contrary to, the terms of the Hudson Policy, the law, insurance industry custom and practice, and the facts; (e) failing to fully inquire into possible bases that might support coverage for the *Opelousas General* lawsuit; (f) wrongfully asserting that an Exclusion E of the Hudson Policy applies as a ground for denying coverage, which is not supported by the terms of the Hudson Policy, the law, insurance industry custom and practice, and the facts; and (g) by giving greater consideration to its own interests than it gave to the interests of HealthSmart.

57. As a direct and proximate result of Hudson's acts, HealthSmart has been damaged in an amount in excess of jurisdictional limits, plus interest thereon.

### FIFTH CLAIM FOR RELIEF – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING AGAINST HUDSON

58. HealthSmart realleges and incorporate by reference herein each allegation contained in paragraphs 1 through 57 above.

59. Implied in the Policy sold by Hudson were covenants that Hudson would act in good faith and deal fairly with its insured, that Hudson would do nothing to interfere with HealthSmart's rights to receive the benefits of the Hudson Policy, and that Hudson would give at least the same level of consideration to its insureds' interests as it gives to its own interests.

60. Instead of complying with these duties, Hudson acted in bad faith by:

(a) Wrongfully and unreasonably denying coverage to HealthSmart;

(b) Wrongfully and unreasonably refusing to reimburse HealthSmart for the attorneys' fees and costs that it has incurred, and continues to incur, in the defense of the *Opelousas General* lawsuit, without any basis in fact or law to do so, thereby forcing HealthSmart to incur substantial financial loss without any assistance from Hudson;

(c) Failing to conduct a full and thorough investigation of the *Opelousas General* lawsuit and facts surrounding the dispute, and asserting grounds for denying coverage based on its inadequate and improper investigation;

(d) Wrongfully and unreasonably asserting grounds for denying coverage that Hudson knows are not supported by, and in fact are contrary to, the terms of the Hudson Policy, the law, insurance industry custom and practice, and the facts;

(e) Wrongfully asserting that an Exclusion E of the Hudson Policy applies as a ground for denying coverage, which is not supported by the terms of the Hudson Policy, the law, insurance industry custom and practice, and the facts;

(f) Failing to fully inquire into possible bases that might support coverage for the *Opelousas General* lawsuit;

(g) Giving greater consideration to its own interests than it gave to HealthSmart's interests; and

(h) Otherwise acting as alleged above.

61. In breach of the implied covenant of good faith and fair dealing, Hudson did the things and committed the acts alleged above for the purpose of consciously withholding from HealthSmart the rights and benefits to which it is entitled under the Hudson Policy. Hudson's acts are inconsistent with HealthSmart's reasonable expectations, are contrary to established claims practices and legal requirements, are contrary to the express terms of the Hudson Policy, and constitute bad faith.

62. Hudson's conduct has been done with a conscious disregard of HealthSmart's rights, constituting oppression, fraud, and/or malice. Specifically, Hudson, by acting as alleged above, in light of information, facts, and relevant law to the contrary, consciously disregarded HealthSmart's rights and forced them to incur substantial and oppressive financial losses, which continue to accrue, without any assistance from Hudson, thereby inflicting substantial financial damage on HealthSmart. Therefore, HealthSmart is entitled to recover punitive damages and applicable statutory penalties from Hudson in an amount that is sufficient to punish and make an example of Hudson and in order to deter similar conduct in the future.

63. HealthSmart is entitled to recover all of its attorneys' fees and costs that it reasonably incurred, and continues to incur, in its efforts to obtain the benefits of insurance that

have been, and continue to be, wrongfully and in bad faith withheld by Hudson. When the precise amount of these fees and costs is known, HealthSmart will seek leave of court to amend this petition.

64. As a direct and proximate result of Hudson's acts, HealthSmart has been damaged in an amount in excess of the Court's jurisdictional limits. The actual amount of damages has not been precisely ascertained yet, but includes the fees and expenses that HealthSmart incurred, continues to incur, and may incur, in its defense of the *Opelousas General* lawsuit and any settlement of, or judgment in, the *Opelousas General* lawsuit, and other damages not yet known or determined.

## SIXTH CLAIM FOR RELIEF – DECLARATORY RELIEF AGAINST HUDSON

65. HealthSmart realleges and incorporates by reference the allegations contained in paragraphs 1 through 64 above.

66. Hudson is obligated under its Policy to investigate fully, to defend HealthSmart fully or to pay in full all sums HealthSmart has incurred or will incur in the defense or settlement of the *Opelousas General* lawsuit.

67. Principia has failed and continues to refuse to accept its obligations to investigate fully, or to pay in full all sums HealthSmart has expended or will expend in the defense or settlement of the *Opelousas General* lawsuit.

68. The facts alleged in this action show that an actual and justiciable controversy exists between HealthSmart and Hudson concerning Hudson's obligations to investigate fully, and to pay in full all sums HealthSmart has incurred or will incur in the defense or settlement of the *Opelousas General* lawsuit. This controversy has adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Thus, HealthSmart seeks a declaration of its rights to defense costs and indemnification by Hudson regarding the *Opelousas General* lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, HealthSmart prays for judgment as follows:

1. On the First Claim for Relief against Principia, for damages, plus interest, according to proof at the time of trial;

2. On the Second Claim for Relief against Principia:

    a. For damages, plus interest, according to proof at the time of trial;

    b. For reasonable attorneys' fees and expenses incurred in obtaining the benefits due under the Principia Policy, plus interest;

    c. For applicable statutory penalties and punitive damages in an amount to be determined at the time of trial;

3. On the Third Claim for Relief against Principia, for a declaration in accord with HealthSmart's contentions stated above;

4. On the Fourth Claim for Relief against Hudson, for damages, plus interest, according to proof at the time of trial;

5. On the Fifth Claim for Relief against Hudson:

    a. For damages, plus interest, according to proof at the time of trial;

    b. For reasonable attorneys' fees and expenses incurred in obtaining the benefits due under the Hudson Policy, plus interest;

    c. For applicable statutory penalties and punitive damages in an amount to be determined at the time of trial;

6. On the Sixth Claim for Relief against Hudson, for a declaration in accord with HealthSmart's contentions stated above;

7. On all claims for relief:

    a. For costs of suit incurred herein;

    b. Interest; and

    c. For such other, further, and/or different relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

HealthSmart hereby demands trial by jury.

Respectfully submitted,

/s/*Gary J. Russo*
GARY J. RUSSO (#10828)
Jones Walker LLP
600 Jefferson St, Suite 1600
Lafayette, LA 70501
Tel: 337.593.7600
Fax: 337.593.7601
grusso@joneswalker.com

COVERT J. GEARY (#14280)
JOSEPH J. LOWENTHAL, JR. (#8908)
MICHAEL C. DREW (#30884)
Jones Walker LLP
201 St. Charles Ave., 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8318
Fax: (504) 589-8318
cgeary@joneswalker.com
jlowenthal@joneswalker.com
mdrew@joneswalker.com

MANATT, PHELPS & PHILLIPS, LLP
ANDREW H. STRUVE (*pro hac vice* applied for)
SUSAN PAGE WHITE (*pro hac vice* applied for)
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
astruve@manatt.com
spwhite@manatt.com

Counsel for HealthSmart Benefit Solutions, Inc.

312058467.1