U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

JAN 23 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| HealthSmart Benefit Solutions, Inc. | Civil Action No. 14-00776 |
| versus | Judge Richard T. Haik, Sr. |
| Principia Underwriting, et al | Magistrate Judge C. Michael Hill |

**MEMORANDUM RULING**

Before the Court is a Motion For Summary Judgment filed by defendant Flectat Limited ("Flectat") [Rec. Doc. 41], plaintiff, HealthSmart Benefit Solutions, Inc.'s ("HealthSmart"), Opposition [Rec. Doc. 46] and Flectat's Reply [Rec. Doc. 49]. For the reasons that follow, Flectat's Motion will be denied.

This action arises as an insurance coverage dispute involving a claims-made professional liability insurance policy subscribed to by Certain Underwriters at Lloyd's, London for which Flectat is the corporate member, and issued to HealthSmart for the Policy Period December 31, 2012 to December 31, 2013 ("the Policy"). HealthSmart was named as a defendant by Opelousas General Hospital Authority ("Opelousas General") in an Amended Complaint filed on December 18, 2013 ("the *Opelousas* lawsuit") and was served on January 15, 2014. On January 23, 2014, HealthSmart notified Flectat of the action filed against it. On or about January 24, 2014, and again on March 24, 2014, Flectat denied coverage to HealthSmart. HealthSmart filed this action against Flectat for breach of contract, declaratory relief and breach of implied covenant of good faith and fair dealing. *R. 1, 19*.

Flectat contends that no coverage exists under the Policy because HealthSmart cannot

satisfy either of the two requirements of the Policy which must be satisfied: (1) a "Claim" must be first made against HealthSmart within the Policy Period; and, (2) the "Claim" must be reported within the Policy Period.

## II. Summary Judgment Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir.1981).

## III. Analysis

There is no dispute that the Flectat Policy is a claims made policy. "The major distinction between the 'occurrence' policy and the 'claims made' policy constitutes the difference between the peril insured. In the 'occurrence' policy, the peril insured is the 'occurrence' itself. Once the 'occurrence' takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the 'claims made' policy, it is the

making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place." *Hood v. Cotter*, 5 So.3d 819, 826-827 (La. 2008). "Coverage under a claims made policy is triggered when a third party claim has been made against an insured person or entity during the policy period." 20 A.L.R. 6th 411. The parties disagree as to whether a "Claim" was made against HealthSmart and whether HealthSmart provided Flectat notice of the claim in accordance with the provisions of the Policy in order to afford HealthSmart coverage.

> The Policy provides in pertinent part:
>
> This Policy is a Claims Made policy and covers claims first made and reported to insurers during the Policy Period.... The terms 'We', 'Us' and 'Our' refer to the underwriters or insurers of this policy and the terms 'You', 'Your' and 'Yours' refer to the Named Insured as stated in the Schedule.
>
> In accordance with the Policy terms and conditions and in consideration of the payment of premium stated in the Schedule, this policy will provide cover for Claims against You....
>
> We will pay on Your behalf Loss and Claim Expenses resulting from any Claim by one or more Third Parties first made against You and notified by You to Us during the Policy Period arising from any act, error or omission in the course of Your Technology Activities and Managed Care Activities giving rise to Claims ....

*R. 17-3, § A, p. 2.* The Policy defines "Claim" as:

> a written demand or service of civil proceedings by one or more claimants seeking any of the following: monetary damages, injunctive relief, retraction or correction, arbitration or mediation....

*Id. at § D, p. 5.* The "Notice of Claim" provision in the Policy provides:

> You, as a condition precedent to Your right to indemnity under this Policy,

3

> shall give Us written notice of any Claim made against You or any specific act, error or omission which is reasonably expected to give rise to a Claim, as soon as practicable but in any event the earlier of 30 days after You first receive notice of any Claim made against You or You first become aware of any specific act, error or omission which is reasonably expected to give rise to a Claim, or the end of the Policy Period.

R. 17-3, § H, p. 15.

The Policy contains a "Choice of Law Clause" providing that "any dispute concerning the interpretation of this Policy shall be governed by the Law of New York, U.S.A." *R. 17.3.* Because of this express choice of law provision in the Policy, the Court finds that this issue is governed by New York law.[1] *See i.e. Louisiana Generating L.L.C. v. Illinois Union Ins. Co.*, 719 F.3d 328, 337 (5th Cir. 2013). The starting point in interpreting an insurance policy is to determine whether the policy terms are ambiguous. "[U]nambiguous terms are to be given their 'plain and ordinary' meaning." *State of New York v. Blank*, 27 F.3d 783, 792 (2d Cir.1994); *Ace Wire & Cable Co., Inc. v. Aetna Casualty & Sur. Co.*, 60 N.Y.2d 390, 398 (1983) ("The tests to be applied in construing an insurance policy are common speech and the reasonable expectation and purpose of the ordinary businessman"). "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir.1998). If there is an ambiguous term, the ambiguity is to be resolved against the insurer, particularly if the term is found in an exclusionary clause. *See Ace Wire & Cable Co.*, 60 N.Y.2d at 398. Nevertheless, "[w]here the provisions of an insurance contract are clear and

---

[1] The parties do not dispute that Louisiana and Texas laws are in accord with New York law as to the general principles of contract law.

unambiguous, the courts should not strain to superimpose an unnatural or unreasonable construction." *Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.*, 80 N.Y.2d 986, 987 (1992). "[I]t is a well-established principle of contract interpretation that specific provisions concerning an issue are controlling over general provisions" *Huen N.Y., Inc. v. Board of Educ. Clinton Cent. Sch. Dist.*, 890 N.Y.S.2d 748, 749 (N.Y.A.D. 4 Dept., 2009).

Flectat maintains that the claim was made on January 15, 2014, fifteen days after the Policy expired, when Opelousas General Hospital Authority served HealthSmart with the *Opelousas Lawsuit*. Flectat further maintains that HealthSmart first notified Flectat of the Opelousas Lawsuit and requested coverage on January 23, 2014, twenty-three days after the Policy expired. While Flectat does not dispute that the *Opelousas* Lawsuit qualifies as a "Claim," it contends that the claim was not "made" against HealthSmart until Flectat was given notice of it.

HealthSmart asserts that a "Claim" as specifically defined in the Policy includes "a written demand" and that such a written demand was made against HealthSmart on December 18, 2013 when Opelousas General amended its petition to add HealthSmart as a new defendant. Citing section A and "Coverage Agreements" of the Policy, Flectat argues that for a claim to have been "'first made against the insured' the insured must be aware of the claim." In essence, Flectat argues that the Policy requires as a precondition, that the insured must be aware of a claim and "by its very nature" the making of a "Claim" involves some type of notice to the insured. Flectat's argument, however, is not supported by the Policy language. While the Policy defines "Claim" as service of civil proceedings against

5

the insured—of which the insured would be aware, the definition also specifically lists a "written demand" against the insured. *R. 17-3, § H*. The definition does not include a requirement that such a "written demand" be discovered by, received by, served upon or otherwise provided to the insured. *See Regency Title Co. LLC v. Westchester Fire Ins. Co.*, 2013 WL 6054820 (E.D. Tex., 2013). Rather, the definition acknowledges the distinction between the date a claim is made against the insured and the date the insurer receives written notice of the claim. Considering the unambiguous definition of "Claim," the Court finds that a claim was made against HealthSmart during the Policy period.

As to the Notice provision, HealthSmart alleges that it provided timely notice when it contacted Flectat on January 23, 2014—eight days after it first received notice of the claim. HealthSmart asserts that the notice requirement is initially stated "as soon as practicable" and then provides the specific instructions of the earlier of 30 days after HealthSmart first received notice of a claim or first become aware of any specific act, error or omission which is reasonably expected to give rise to a claim, **or** (if the 30 days provision does not apply) by the end of the Policy Period.

Flectat argues that the portion of the Notice provision beginning with "the earlier of 30 days after HealthSmart first received notice of a Claim..." is set off by a comma before the portion of the provision, "or by the end of the Policy Period." Thus Flectat argues, because the "earlier of 30 days" provision does not modify the "end of the Policy Period" it does not extend the Policy Period, but instead, only applies to the notice and awareness portion.

6

While the Court does not disagree with Flectat's grammatical interpretation of the Notice provision, it does not conflict with HealthSmart's assertion that the provision permitted HealthSmart's notification on January 23, 2014, within 30 days after HealthSmart first received notice of the Claim.

Finally, Flectat contends that HealthSmart's interpretation would render the Policy unworkable and result in unnecessary and unintended gaps in coverage. The Court disagrees. Under Flectat's analysis, if a written demand had been made during the Policy period and the insured first received notice of the Claim or was served with the Claim on December 31, the insured would be unable to notify Flectat in writing before the end of the Policy period and would be denied insurance coverage. The Court finds that Flectat's strained construction of the Policy language would render the carefully worded and punctuated notice requirements moot and would produce absurd consequences.

*IV. Conclusion*

Based on the foregoing, the Court determines that the language of the Policy is unambiguous. Under the Policy, a "Claim" was made against HealthSmart during the Policy period and HealthSmart provided timely notice of the claims to Flectat under the terms of the Policy.[2] Accordingly, Flectat's Motion For Summary Judgment will be denied.

Richard T. Haik, Sr.

---

[2] In light of the Court's ruling, it need not consider HealthSmart's contention that, pursuant to New York law, a 60-day automatic extended reporting period must be applied to the Policy.